# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R & R SAILS, INC dba HOBIE CAT COMPANY,<br><br>                        Plaintiff,<br><br>vs.<br><br><br><br>INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, et al,<br><br>                        Defendant. | CASE NO. 07cv998-MMA(POR)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 55] |

This matter comes before the Court on Defendant Insurance Company of the State of Pennsylvania's ("Defendant") Motion for Summary Judgment [Doc. No. 55]. Defendant requests an order of this Court entering summary judgment in Defendant's favor as to all claims brought by Plaintiff R&R Sails, Inc., doing business as Hobie Cat Company ("Plaintiff"). Plaintiff opposes the motion [Doc. No. 59]. Defendant filed a reply [Doc. No. 60]. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion.

/ / /

/ / /

/ / /

/ / /

## BACKGROUND

This diversity case is an insurance dispute arising out of property damage resulting from massive wildfires in Australia in December 2001. The following material facts are not in dispute.[1] Hobie Cat Australasia Party Ltd. ("HCAP") is an Australian corporation with its principal place of business in New South Wales, Australia. HCAP is a wholly owned subsidiary of Plaintiff, its parent corporation. Plaintiff is a Missouri corporation with its principal place of business in Oceanside, California. HCAP manufactures, distributes, and markets recreational and competitive-grade sailing boats, kayaks, catamarans, and other watercraft. HCAP receives products and materials from Plaintiff. In 2001, HCAP operated its business out of a leased property in Woolamia. Defendant insured Plaintiff under one or more insurance policies, including Policy No. EX55600240 from September 1, 2001 through September 1, 2002 ("the Policy"). The Policy provided coverage for foreign commercial property, specifically the Woolamia property. (*See* "Schedule of Locations," attached to the Policy, attached to the Complaint.) The Policy provided coverage for fire losses affecting buildings and contents and for resulting loss of income, business interruption, and for extra expenses caused by fire. (*Complaint* ¶ 6.) The Policy provided for the following schedule of limits on liability coverage: building $250,000; contents $100,000; business interruption $500,000; and extra expenses $5,000. (*Id*. ¶ 7.)

On December 25, 2001, wildfires destroyed the Woolamia property and most of HCAP's inventory, manufacturing equipment and supplies, on-site office equipment, and computers. The loss was reported to Defendant on December 27, 2001. Within 48 hours, Defendant's Australian adjuster, Ian McDonald contacted HCAP, visited the site briefly, and began to adjust the claim. In the first week of January 2002, HCAP rented another facility near the Woolamia property. On February 20, 2002, Plaintiff submitted a Sworn Proof of Loss Statement for the $100,000 Contents limits to Defendant. Om March 1, 2002, Defendant paid Plaintiff the Policy's $100,000 limits for Contents. Thereafter, a dispute arose between insurer and insured regarding the value of lost inventory and personal property (i.e., contents), as well as the value of Plaintiff's claim for business

---

[1] All citations to these undisputed facts can be found in Defendant's Statement of Uncontroverted Material Facts.

interruption and extra expenses. The dispute continued into 2004. In May 2004, Defendant paid Plaintiff $136,948 for the undisputed portion of the business interruption and extra expense claims; Plaintiff's demand was for the full $500,000 business interruption limits of the Policy. In September 2004, Defendant paid Plaintiff the Policy's $100,000 limits for newly acquired building and property. Plaintiff transferred the $336,948 in insurance proceeds to HCAP. The parties remained in dispute over the amount to be paid out to Plaintiff under the terms of the Policy. The instant litigation ensued.

Plaintiff brings three causes of action against Defendant for breach of contract, breach of the implied covenant of good faith and fair dealing ("bad faith"), breach of California Business and Professions Code section 17200 (unfair business practices), and declaratory relief. Plaintiff also seeks punitive damages.

## **DISCUSSION**

Defendant moves for summary judgment in its favor as to Plaintiff's claims for breach of contract, bad faith, unfair business practices, and punitive damages. As a threshold matter, Defendant asserts that Plaintiff lacks standing to maintain this suit because it had no insurable interest in the losses sustained in the fire. As such, Defendant argues that Plaintiff's breach of contract claim fails as a matter of law, and therefore Plaintiff's dependent bad faith claim also fails. In addition, Defendant contends that Australian law applies to this case pursuant to California's choice of law rules. Because Australian law does not recognize a bad faith cause of action, Defendant argues that Plaintiff's claim fails on this basis as well. Defendant contends that Plaintiff's state law unfair business practices claim is barred by the Unfair Insurance Practices Act. Finally, Defendant argues that Plaintiff cannot meet the evidentiary burden required to survive summary judgment with respect to Plaintiff's punitive damages claim.

**A.    SUMMARY JUDGMENT STANDARD**

Pursuant to Federal Rule of Civil Procedure 56(c), a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). It is beyond dispute that

1  "[t]he moving party bears the initial burden to demonstrate the absence of any genuine issue of
2  material fact." *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) (citation
3  omitted). "Once the moving party meets its initial burden, . . . the burden shifts to the nonmoving
4  party to set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there
5  is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal
6  quotation marks and citations omitted).

7  A mere scintilla of evidence is not sufficient "to defeat a properly supported motion for
8  summary judgment; instead, the nonmoving party must introduce some 'significant probative
9  evidence tending to support the complaint.'" *Fazio v. City & County of San Francisco*, 125 F.3d
10  1328, 1331 (9th Cir. 1997) (quoting *Anderson*, 477 U.S. at 249, 252). Thus, in opposing a summary
11  judgment motion it is not enough to simply show that there is some metaphysical doubt as to the
12  material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)
13  (citations omitted). However, when assessing the record to determine whether there is a "genuine
14  issue for trial," the court must "view the evidence in the light most favorable to the nonmoving
15  party, drawing all reasonable inferences in h[er] favor." *Horphag*, 475 F.3d at 1035 (citation
16  omitted). On a summary judgment motion, the court may not make credibility determinations; nor
17  may it weigh conflicting evidence. *See Anderson*, 477 U.S. at 255. Thus, as framed by the Supreme
18  Court, the ultimate question on a summary judgment motion is whether the evidence "presents a
19  sufficient disagreement to require submission to a jury or whether it is so one-sided that one party
20  must prevail as a matter of law." *Id.* at 251-52.

21  **B.      PLAINTIFF HAS STANDING TO MAINTAIN THIS LAWSUIT**

22  As a threshold matter, Defendant asserts that Plaintiff lacks standing to maintain this lawsuit.
23  Defendant argues that Plaintiff, as a separate and distinct legal entity, did not have an insurable
24  interest in the items lost by HCAP in the fire. Based on this assertion, Defendant argues that
25  Plaintiff had no cognizable claim under the insurance policy and therefore lacks standing to sue
26  Defendant for breach of the insurance contract, entitling Defendant to summary judgment. Plaintiff
27  argues that because it is the entity that purchased the insurance policy, entered into the contract with
28  Defendant, and is the sole named insured, it has standing to bring its breach of contract and related

claims against Defendant. Further, Plaintiff rebuts Defendant's argument that Plaintiff did not have an insurable interest in the destroyed property. Specifically, Plaintiff argues that it lost its own products and property in the fire and therefore had a direct pecuniary interest in the lost items.

Under California law, both the parties to an insurance contract and third-party beneficiaries of the contract are entitled to enforce the contract. *See* Cal. Civ.Code § 1559 ("A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it"). Here, Plaintiff is both a named insured on the contract (and therefore a beneficiary) and it had a directly insured interest in the Woolamia property under the policy. The Foreign Commercial Property Schedule of Locations listed only the property in Woolamia as being covered under Plaintiff's foreign commercial general liability policy purchased from Defendant. The terms of the insurance contract, combined with Plaintiff's evidence of its financial control over HCAP, refute Defendant's argument. By alleging and providing facts in support of its status as a named beneficiary in the policy, Plaintiff has demonstrated that it has standing to sue Defendant for alleged breach of the contract.

**C.   THE COURT SHALL APPLY CALIFORNIA LAW TO THIS ACTION**

Defendant argues that the Court should apply Australian law to this dispute. Presiding District Judge Marilyn L. Huff considered this issue earlier in the litigation upon Defendant's motion, and determined that California law applies. (*See Court's April 11, 2008 Order*, Doc. No. 36.) However, Judge Huff also recognized that the choice of law in this case was not an obvious one, and denied the motion without prejudice to Defendant raising the issue after the parties had conducted relevant discovery. Defendant asserts that since filing its motion, discovery has revealed facts sufficient to support the application of Australian law. Australian law does not recognize a bad faith claim or allow for the recovery of punitive damages based on breach of an insurance contract. (*Id.* at 7.) Therefore, these claims would be barred. The laws of California and Australia are materially different, making the choice of law analysis a matter of great importance in this case. *See, e.g.*, *Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.* (1993) 14 Cal.App.4th 637, 645 (holding that a state's law is materially different from California law if application of the other state's law leads to a different result). Because of the material difference in law, the Court must

determine whether each state has an interest in the outcome of this litigation.[2]

As the forum state, California has an interest in applying its law to this case. *Rosenthal v. Fonda*, 862 F.2d 1398, 1402 (9th Cir. 1988) (citing *Strassberg v. New Eng. Mut. Life Ins. Co.*, 575 F.2d 1262, 1264 (9th Cir. 1978)). If Australia has no legitimate interest in applying its law, the Court does not have "a true conflicts case" and may apply California law. *Ins. Co. of N. Am. v. Fed. Express Corp.*, 189 F.3d 914, 921 (9th Cir. 1999) (citation omitted). The California Supreme Court once declared that a choice of law test based on location of the loss "must be subordinated to the objective of proper choice of law in conflict cases, i.e., to determine the law that most appropriately applies to the issue involved[.]" *Reich v. Purcell*, 67 Cal.2d 551, 555 (Cal.1967); *see* Restatement § 6 cmt. j (simplicity of choice of law inquiry "should not be overemphasized, since it is obviously of greater importance that choice of law rules lead to desirable results").

Judge Huff previously found that the interests of California are the most significant to this dispute. This Court agrees, and Defendant does not put forth new facts or evidence to convince the Court otherwise. California, not Australia, was the location where the contract was negotiated and formed by the parties. Plaintiff has its principal place of business in California and Defendant willingly conducted business in California. Defendant knowingly dealt with a corporation headquartered in California and voluntarily subjected itself to the contract laws of California. California is Plaintiff's choice of forum. The contract was made between an insurance company that does business internationally, and a corporation doing business in California, therefore "California has an interest in seeing that the contract is enforced according to the law where it was made." *Robert McMullan & Son, Inc. v. United States Fid. & Guar. Co.*, 103 Cal. App. 3d 198, 205-206 (1980).

Further, a significant basis of a contract bargain is knowing the measure of the damages in the event one of the parties breaches the agreement. California's breach of contract damage remedies are materially different from those available in Australia. California has an interest in

---

[2] As Judge Huff noted, the Policy does not contain a general choice of law clause, which potentially would have rendered this inquiry unnecessary. (*Id.* at 3.) The Court incorporates by reference herein Judge Huff's summary of the legal standard to be applied by California federal courts sitting in diversity with respect to a choice of law problem in a breach of contract case, as well as her factual findings. (*Id.* at 3-6.)

assuring that those who elect to contract in California and avail themselves of California laws will have the benefit of those laws and of their bargain. As Judge Huff concluded upon original consideration of this issue,

> "The balance of interests is not overwhelmingly in favor of California. The only insured property is located in Australia. Moreover, the Coverage Territory of the policy excludes property within the United States. (Notice of Removal Ex. 1 at 23.) Nonetheless, on the facts currently presented, Defendant has not met its burden showing that the governmental interest test supports the application of foreign law."

Accordingly, the Court shall apply California law.

**D.    SUMMARY JUDGMENT**

*1.    Breach of Contract*

Defendant seeks to defeat Plaintiff's breach of contract claim on summary judgment based on the assertion that Plaintiff had no insurable interest in any aspect of the loss, did not sustain loss or damage under the terms of the Policy, and therefore Defendant legally cannot be found to have breached a contract with Plaintiff. Because the Court finds that Plaintiff did have an insurable interest in the loss, and is the beneficiary of the Policy, as discussed above, Defendant's argument fails.

Defendant also seeks partial summary judgment with respect to the breach of contract claim, requesting the Court find as a matter of law that the business interruption period covered under the terms of the Policy terminated on September 30, 2002.

The Policy does not set a term limit on the business interruption period. The relevant portion of the Policy states:

> "If the real and personal property covered by this policy is damaged or destroyed by the peril(s) insured against during the term of this policy and a necessary interruption of business directly results. Recovery under this policy shall be the ACTUAL LOSS SUSTAINED by the INSURED directly resulting from such interruption of business . . . for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such described property as has been damaged or destroyed, commencing with the date of such damage or destruction and not limited by the date of expiration of the Policy. Due consideration shall be given to the continuation of normal charges and expenses, including payroll expenses, to the extent necessary to resume operations of the INSURED with the same quality of service which existed immediately preceding the loss."

Therefore, although the Policy expired September 1, 2002, it allowed coverage of business interruption to extend beyond that date pursuant to the above terms. Defendant argues that Plaintiff

1 submitted its business interruption claim on January 28, 2003, stating that the business interruption
2 period terminated in September 2002. Defendant alleges that Plaintiff repeated this statement in
3 June 2004, and as such, the Court should deem September 30, 2002 the date Plaintiff's covered
4 business interruption period terminated. Plaintiff claims that it never made that statement, and that
5 although it submitted data for lost sales through September 2002, the losses extended beyond that
6 period.

7 Defendant presents evidence demonstrating that its own accountants calculated business
8 interruption losses through September 2002. However, the June 24, 2004 Fire Claim Overview cited
9 by Defendant contained a summary of the methodology used to calculate Plaintiff's business
10 interruption claim, as well as the statistics supporting the claim. Plaintiff calculated lost income for
11 the period January 2002 through September 2002, referring to that period of time as the "Rebuild
12 Period." (*See Weinriech Decl'n*, Ex. E at 358.) Plaintiff also calculated lost income for the twelve
13 month period following the Rebuild Period, added the two figures together, and stated a claim for
14 the total lost income over the defined twenty one month period. (*Id.*)

15 Plaintiff presents competent summary judgment evidence raising a genuine issue as to
16 whether September 30, 2002 was the admitted termination date of coverage under the business
17 interruption period. There was "total continuing interruption to manufacturing operations until
18 September 30, 2002." (*Id.* at 414.) According to Douglas Skidmore, president of the company,
19 limited manufacturing of fiberglass parts resumed in September 2002. (*Cologne Decl'n*, Ex. 16 at
20 242.) Richard Rogers, chairman of the company, confirmed this date, stating in his April 5, 2008
21 deposition:

22 "At the time we were just trying to get something out. That was just a date [September 2002] when we were starting to get back into production on the fiberglass point of
23 view. So we picked a time to get this report out as it was, by January, and go back and study the thing. We didn't have time to go get any longer – maybe we could have put
24 October–November, but at the time we just took September in there as a date when we were first starting to get back into some type of production in the fiberglassing. So it
25 was a logical point at that time."

26 (*Id.*, Ex. 15 at 222.) Rogers further testified that full production was not reached "until well after
27 twelve months [after the fire]." (*Id.* at 223.)

28 Based on the evidence currently before the Court, including testimony by Plaintiff's persons

most knowledgeable as well as documentation of the various calculations of the business interruption claim by both Plaintiff's and Defendant's accountants, the Court finds that a genuine issue of material fact exists with respect to the length of the business interruption period covered by the Policy. The evidence does not support Defendant's assertion that Plaintiff admitted the period ended on September 30, 2002. Defendant is not entitled to summary judgment on this issue. Accordingly, the Court denies Defendant's motion for summary judgment as to Plaintiff's breach of contract claim.

### *2.  Bad Faith*

Defendant contends that Plaintiff's claim for breach of the implied covenant of good faith and fair dealing ("bad faith claim") fails as a matter of law. Defendant once again asserts the lack of insurable interest and application of Australian law arguments to support the request for summary judgment. Because the Court finds that Plaintiff did have an insurable interest in the loss, and is the beneficiary of the Policy, and that California law applies and recognizes a cause of action for bad faith, as discussed above, these arguments fail. The Court shall turn to Defendant's third argument that the genuine dispute between the parties' accountants defeats Plaintiff's bad faith claim as a matter of law. Defendant asserts that Plaintiff's claim for benefits was handled reasonably by its employees, and Plaintiff provides no competent evidence in opposition.

Every contract contains an implied covenant of good faith and fair dealing, whereby a party may not impair the other's right to receive the benefit of his bargain. *Egan v. Mutual of Omaha Insurance Company* (1979) 24 Cal.3d 809, 818. A "bad faith" claim against an insurer is based on a breach of the implied covenant of good faith and fair dealing, which exists to assure the insurer makes prompt payment of claims to the insured. *Buxbaum v. Aetna Life & Casualty Co*. (2002) 103 Cal.App.4th 434, 442. All insurance contracts include the implied covenant of good faith and fair dealing. *See Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 948; *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc*. (2000) 78 Cal.App.4th 847, 879. Where an insurer engages in unreasonable conduct in connection with an insured's insurance claim, the insurer is said to have tortiously breached the implied covenant. *See Polisso*, 139 Cal.App.4th at 948.

Under California law, in order to prevail on a claim for breach of the implied covenant of

good faith and fair dealing, Plaintiff must establish that the Defendant's handling of the claim was unreasonable or without proper cause. *Love v. Fire Ins. Exch.* (1990) 221 Cal. App.3d 1136, 1151. If there was a "genuine dispute" as to the insurer's liability, a court can conclude as a matter of law that the insurance company's handling of the claim was not unreasonable. *Opsal v. United Services Auto. Assn.* (1991) 2 Cal. App. 4th 1197, 1205-1206; *see also Lunsford v. American Guarantee & Liability Ins. Co.*, 18 F.3d 653, 656 (9th Cir. 1994) (citations omitted). The "genuine dispute" doctrine may be applied in cases where the insurer denies a claim based upon the opinions of experts. *Fraley v. Allstate Ins. Co.* (2000) 81 Cal.App.4th 1282, 1291. In *Guebara v. Allstate Ins. Co.*, 237 F.3d 987 (9th Cir. 2001), the Ninth Circuit held that the "genuine dispute" doctrine should be applied on a case-by-case basis:

> "In some cases, the application of the rule to purely factual disputes will be inappropriate. In others, investigations by a defendant's independent experts will permit the invocation of the doctrine and summary judgment for the defendant on a bad faith claim."

*Guebara*, 237 F.3d at 994.

As proof that Plaintiff's claim was handled reasonably, Defendant points to the immediate payment of $100,000 in contents coverage, followed by a payment of $100,000 in newly acquired building coverage, and $236,948 in business interruption and extra expenses coverage. Defendant argues that Plaintiff's claim for bad faith fails as a matter of law because there was a genuine dispute regarding Plaintiff's benefits under the business interruption portion of the Policy based on evidence of conflicting accountant opinions. Defendant refers to the reports of accountants Johnson and Schroepfer as support for the argument that there were legitimate conflicting opinions in this case as to the amount of loss covered, and that by hiring a second accountant to review the claim Defendant investigated the claim sufficiently.

Plaintiff asserts that a triable issue exists with respect to the bad faith claim. Plaintiff cites to the testimony of Defendant's claim handling expert Peter Evans, who stated that Defendant's conduct fell below the standard of care. Plaintiff also cites the deposition testimony of claim handler Blaise Lombardo, his supervisor Joe Chianese, and the head of the claims unit, William Wymes. Plaintiff argues that the testimony of these individuals provides proof of pervasive institutional bad

faith conduct by Defendant. Plaintiff cites the deposition testimony of Defendant's accountant Johnson, the forensic accountant assigned to Plaintiff's claim and designated by Defendant as an expert in this case. Johnson testified in July 2008 that he stood by his original calculation of Plaintiff's business interruption losses in 2003. Plaintiff argues that this demonstrates Defendant handled the claim unreasonably because Johnson was supplied over the course of subsequent years with additional data regarding Plaintiff's actual losses, and failed to adjust the claim accordingly. "An insurance company may not ignore evidence which supports coverage. If it does so, it acts unreasonably towards its insured and breaches the covenant of good faith and fair dealing." *Mariscal v. Old Republic Life Ins. Co.* (1996) 42 Cal.App.4th 1617, 1624.

"The reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1010 (9th Cir.2004). An insurer is not entitled to a judgment as a matter of law where, viewing the facts in the light most favorably to the insured, a jury could conclude that the insurer acted unreasonably. *See Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161 (9th Cir.2002); *Hubka v. Paul Revere Life Ins. Co.*, 215 F.Supp.2d 1089, 1092 (S.D.Cal. 2002). Thus, summary judgment is not warranted on Plaintiff's bad faith claim. As set forth above, Plaintiff has proffered evidence raising a triable issue of fact whether Defendant reasonably handled Plaintiff's claim. To enter summary judgement in favor of Defendant, the Court must find that the only reasonable inference from the evidence is that Defendant handled Plaintiff's claim for benefits in good faith. In other words, if a reasonable juror could find that Defendant was unreasonable in refusing to pay Plaintiff the full $500,0000 under the limits of the business interruption coverage, summary judgement is inappropriate. The Court finds that a reasonable juror could find that Defendant acted unreasonably, and the Court accordingly denies Defendant's motion for summary judgement as to Plaintiff's bad faith claim.

### 3. *Unfair Business Practices*

Defendant argues that Plaintiff's claim under Section 17200 of California's Business and Professions Code fails as a matter of law because it is predicated on alleged violations of Section 790.03(h) of California's Insurance Code. Because the California Supreme Court has held that no private right of action exists under this section of the Insurance Code, Defendant asserts that

1  Plaintiff's Section 17200 claim is barred. Plaintiff states in opposition, "the presence of the
2  Business and Professions Code claim in the lawsuit facilitates the introduction of certain evidence at
3  trial. The Court should not dismiss the claim at this time but can make that determination at the time
4  of trial or when the Plaintiff rests its case in chief." (*Plaintiff's Memorandum*, 14.) This is the sum
5  of Plaintiff's argument against summary judgment on this claim.

6  California courts prohibit negligent investigation and adjustment claims against insurers.
7  Although no private civil cause of action against an insurer for bad faith is available under the
8  California Unfair Insurance Practices Act (Cal. Ins. Code, § 790.03)("UIPA")), "the courts retain
9  jurisdiction to impose civil damages or other remedies against insurers in appropriate common law
10 actions, based on such traditional theories as fraud, infliction of emotional distress, and (as to the
11 insured) either breach of contract or breach of the implied covenant of good faith and fair dealing."
12 *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 304-305. Section 17200,
13 *et seq*, of the Business and Professions code prohibits "any unlawful, unfair or fraudulent business
14 act or practice." Cal. Bus. & Prof. Code, § 17200; *Korea Supply Co. v. Lockheed Martin Corp*.
15 (2003) 29 Cal.4th 1134, 1143. Section 17200 "covers a wide range of conduct" and "embraces
16 'anything that can properly be called a business practice and that at the same time is forbidden by
17 law.'" *Korea Supply*, 29 Cal.4th at 1143 (quoting *Cel-Tech Communications, Inc. v. Los Angeles
18 Cellular Telephone Co*. (1999) 20 Cal. 4th 163, 180. Nonetheless, the UCL "provides no toehold for
19 scaling the barrier of *Moradi-Shalal*" in that a third-party unfair settlement practices claim under the
20 UCL "would render *Moradi-Shalal* meaningless." *Safeco Ins. Co. v. Superior Court* (1990) 216
21 Cal.App.3d 1491, 1494.

22 Under the California Supreme Court's decision in *Moradi-Shalal*, the UIPA does not "create
23 a private cause of action against an insurer that commits one of the various acts listed in section
24 790.03, subdivision (h)." *Moradi-Shalal*, 46 Cal. 3d at 304. Further, in *Textron Fin. Corp*., the court
25 held that a party cannot plead around the rule established in *Moradi-Shalal* by "merely relabeling
26 their cause of action as one for unfair competition." *Textron Fin. Corp.*, 118 Cal. App. 4th at 1070
27 (citations omitted); *see also Rubin v. Green* (1993) 4 Cal. 4th 1187, 1201-02 (noting the "decision in
28 [*Moradi-Shalal*] may not be circumvented by recasting the action as one under Business and

Professions Code section 17200"). Plaintiff's complaint states on its face that the Section 17200 claim is based on Defendant's alleged violation of UIPA Section 790.03(h). (*See Complaint* ¶ 43.) As such, this claim is barred as a matter of law. The Court grants Defendant's motion for summary judgment as to Plaintiff's Section 17200 claim.

### *4.     Punitive Damages*

Finally, Defendant contends that summary judgment should be granted as to Plaintiff's claim for punitive damages because Plaintiff will not be able to persuade a jury that Defendant acted with the requisite malice, oppression, or fraud to justify an award of punitive damages. "In order to establish that an insurer's conduct has gone sufficiently beyond mere bad faith to warrant a punitive award, it must be shown by clear and convincing evidence that the insurer has acted maliciously, oppressively, or fraudulently." *Phelps v. Provident Life and Accident Insurance Company*, 60 F.Supp.2d 1014, 1026 (C.D. Cal. 1999).

Defendant argues that even assuming that the Court found that Defendants acted in bad faith, there is simply nothing which could reasonably support a conclusion that, to the standard of clear and convincing evidence, Defendant acted in a way that could be described as abusive or with the intention to harm. Defendant alleges that they paid benefits to Plaintiff, and hired "not one but two different accountants to review the BI claim."

Courts have held that a claimant such as Plaintiff satisfies the "despicable conduct" requirement where, for example, there is an established policy or practice in claims handling which is harmful to insurers, *Mock v. Michigan Millers Mut. Ins. Co*. (1992) 4 Cal.App.4th 306, 329, or where an insurer denies liability on a pretext basis, *Hangarter v. Provident Life and Accident Insurance Company*, 373 F.3d 998 (9th Cir. 2004)). Plaintiff alleges that Defendant's claims handlers "took steps to 'sanitize' the claim file by selectively including only favorable communications and correspondence in its claim file in order to five this Court and the jury the appearance that delays were [Plaintiff's] fault."[3] (*Plaintiff's Memorandum*, 14, citing UMF No.

---

[3] Defendant objects to this evidence as inadmissable on the grounds that "expert testimony about the credibility of witnesses is inadmissible." (citations omitted). The Court overrules this objection. Mr. Hamilton's testimony on this point relates to his opinion regarding the contents of the claim file and the procedures used by Defendant's claims handlers in maintaining the claims file. While his opinion does not reflect on the claims handlers' conduct in a favorable light, the Court does not find that he is

1 117.) Plaintiff puts forth deposition testimony showing that Defendant lied to Plaintiff about its ongoing investigation of Plaintiff's claim. (*Id*., citing UMF No. 119.) Plaintiff argues that Defendant's pattern of artifice continued even after the lawsuit was filed. Defendant lied about the existence of notes in the claim file and did not produce the notes until ordered to do so by the Court. (*Id* at 15.) Plaintiff presents testimony that Defendant instructed its appraiser to not work on Plaintiff's claim and to not talk or meet with Plaintiff's representatives regarding the claim. (*Id*., citing UMF No. 140.)

Pursuant to Cal. Civ. Code § 3294, punitive damages may be recovered "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). "Punitive damages should not be allowable upon evidence that is merely consistent with the hypothesis of malice, fraud, gross negligence or oppressiveness. Rather some evidence should be required that is inconsistent with the hypothesis that the tortious conduct was the result of a mistake of law or fact, honest error of judgment, over-zealousness, mere negligence or other such noniniquitous human failing." *Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal. App. 4th 1269, 1288. In ruling on a summary judgment motion, "the judge must view the evidence presented through the prism of the substantive [clear and convincing] evidentiary burden." *American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton* (2002) 96 Cal. App. 4th 1017, 1051 (internal citations omitted).

The Court concludes that Defendant is not entitled to summary judgment on Plaintiff's punitive damages claim. Under California law, a plaintiff may recover punitive damages if he proves "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code. § 3294(a). Whether defendant is guilty of oppression, fraud or malice, is "somewhat dependent" on whether defendant "acted in bad faith in refusing to pay the claim." *Nasiri v. Allstate Indem. Co*., 41 Fed. Appx. 76, 79 (9th Cir. 2002). Given that material issues of fact exist as to whether Defendant acted in bad faith, the Court cannot conclude as a matter of law that Defendant did not act with malice, oppression, or fraud in its handling of Plaintiff's claim. *Id.* Accordingly, the Court denies Defendant's motion for summary judgment as to Plaintiff's claim for

---

offering an opinion as to their credibility as witnesses in this case.

1  punitive damages.

## CONCLUSION

Based on the foregoing reasons, the Court finds that Defendant Insurance Company of the State of Pennsylvania is not entitled to summary judgment in its favor as to Plaintiff R&R Sails, Inc.'s claims for breach of contract, bad faith, or punitive damages. The Court finds that Defendant is entitled to summary judgment in its favor as to Plaintiff's unfair business practices claim. Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion for summary judgment.

Based on the procedural posture of this case, the Court **ORDERS** the parties to prepare a Joint Proposed Final Pretrial Schedule to be filed with the Court on or before ***April 10, 2009***.

**IT IS SO ORDERED**.

DATED:  March 30, 2009

*/s/ Michael M. Anello*

Hon. Michael M. Anello
United States District Judge